**United States District Court**

For the Northern District of California

1

2

3

4

5

6

7

8                       IN THE UNITED STATES DISTRICT COURT

9                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  ROBERT W. DUPUY,                        No. C-06-1888 MMC

12              Plaintiff,              **ORDER GRANTING IN PART AND
                                        DENYING IN PART DEFENDANT'S**
13      v.                              **MOTION TO DISMISS; VACATING
                                        HEARING; SCHEDULING CASE**
14  WELTMAN, WIENBERG & REIS CO.,       **MANAGEMENT CONFERENCE**

15              Defendant

16  _____/

17          Before the Court is defendant Weltman, Weinberg, & Reis Co.'s ("WWR") motion,

18  filed April 25, 2006, to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil

19  Procedure, plaintiff Robert Dupuy's ("Dupuy") complaint.  Dupuy has filed opposition, to

20  which WWR has replied.  Having considered the papers filed in support of and in opposition

21  to the motion, the Court finds the matter appropriate for decision on the papers, VACATES

22  the hearing set for June 9, 2006, and rules as follows.

23                               **BACKGROUND**

24          Dupuy alleges he incurred a "debt" to Bank of America, which sold his "account" to

25  Sherman Acquisition ("Sherman").  (See Compl. ¶¶ 6-7.)  According to Dupuy, Sherman

26  assigned the debt collection to WWR and, thereafter, WWR sent two letters to Dupuy in

27  furtherance of the debt collection.  (See Compl. Exs. A ("March letter") & C ("April letter").)

28  Both the March and April letters were printed on the following letterhead: "Law Offices of

1  Weltman, Weinberg & Reis Co., L.P.A." Id.  The March letter was signed by Julie A.

2  Vaccarelli ("Vaccarelli"); the April letter was signed by Stanley Green ("Green").  Id.  Dupuy

3  alleges the language employed in WWR's letters gives rise to claims under the Fair Debt

4  Collection Practices Act ("FDCPA"), see 15 U.S.C. §§ 1692-1692o, and the Robbins-

5  Rosenthal Fair Debt Collection Practices Act ("RR FDCPA"), see California Civil Code

6  § 1788.

7  **LEGAL STANDARD**

8  A motion to dismiss under Rule 12(b)(6) cannot be granted unless "it appears

9  beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

10  entitle him to relief." See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  Dismissal can be

11  based on the lack of a cognizable legal theory or the absence of sufficient facts alleged

12  under a cognizable legal theory.  See Balistreri v. Pacifica Police Dep't, 901 F. 2d 696, 699

13  (9th Cir. 1990).  In analyzing a motion to dismiss, the court must accept as true all material

14  allegations in the complaint and construe them in the light most favorable to the nonmoving

15  party.  See NL Industries, Inc. v. Kaplan, 792 F. 2d 896, 898 (9th Cir. 1986).

16  **DISCUSSION**

17  The FDCPA prohibits debt collectors from making false or misleading statements in

18  the course of attempting to collect a debt.  See Wade v. Reg'l Credit Ass'n, 87 F. 3d 1098,

19  1099 (9th Cir. 1996) (noting Congress enacted FDCPA to combat "use of abusive,

20  deceptive, and unfair debt collection practices").  Likewise, the RR FDCPA prohibits such

21  statements, by requiring compliance with the substantive provisions of the FDCPA.  See

22  Cal. Civ. Code § 1788.17 (providing debt collectors must comply with FDCPA).  "Whether

23  language employed in connection with the collection of debt violates the FDCPA is a

24  question of law for the court to decide." Van Westrienen v. Americontinental Collection

25  Corp., 94 F. Supp. 2d 1087,1099 (D. Or. 2000) (citing Terran v. Kaplan, 109 F. 3d 1428,

26  1432-1433 (9th Cir. 1996)).  In considering whether a statement in a debt collection letter is

27  false or misleading, a district court applies "the least sophisticated debtor" standard.  See

28  Wade, 87 F. 3d at 1100.  Under that standard, if the court finds the least sophisticated

2

1    debtor "would likely be misled" by a debt collection letter, the court "must hold the

2    [defendant] has the violated the [FDCPA]."  See Swanson v. Southern Oregon Credit Serv.,

3    869 F. 2d 1222, 1225 (9th Cir. 1988).

4         Dupuy alleges that WWR's letters violate the FDCPA and the RR FDCPA in four

5    different ways: (1) the letters falsely represent attorney involvement in the collection letters,

6    in violation of 15 U.S.C. § 1692e, e(3) and e(10); (2) the letters imply a threat of litigation

7    that WWR did not intend to initiate, in violation of § 1692e(5); (3) the April letter fails to set

8    forth the true amount of the debt, in violation of § 1692g(a)(1); and (4) the April letter

9    includes a false settlement offer, in violation of §§ 1692e(10) and 1692f.  (See Compl.

10   ¶¶ 18-21).[1]  In its motion, WWR argues its letters are straightforward, non-deceptive, and

11   non-coercive communications that do not contain false or misleading statements.

12   **A.  False Representation of Attorney Involvement**

13        Under the FDCPA, "[a] debt collector may not use false or misleading

14   representations," including "[t]he false representation or implication that any individual is an

15   attorney or that any communication is from an attorney."  See 15 U.S.C. § 1692e(3).

16        Dupuy alleges that WWR's collection letters are "false[,] deceptive, and misleading

17   as being from an attorney because no attorney had any meaningful involvement in

18   reviewing [p]laintiff's file or discussing resolution of the matter."  (See Compl. ¶ 12.)

19   According to Dupuy, WWR, which is "staffed with teams of lay-collectors," (see id. ¶ 10),

20   "did not have sufficient information about the account for [WWR] to reach an independent

21   professional judgment about liability and collectibility," (see id. ¶ 13).  In its motion, WWR

22   argues the letters "clearly do not represent to have been signed by an attorney," and thus

23   "there is no false implication that an attorney formed an opinion or was meaningfully

24

25

26        [1]In alleging his claims, Dupuy does not identify any particular section(s) of the RR
     FDCPA that WWR has violated.  As noted, however, the RR FDCPA incorporates the
27   substantive provisions of the FDCPA.  Accordingly, the Court's discussion of Dupuy's
     FDCPA claims applies equally to Dupuy's RR FDCPA claims.  See, e.g., Hosseinzadeh v.
28   M.R.S. Assocs., 387 F. Supp. 2d 1104, 1118 (C.D. Cal. 2005) (holding where defendant
     violates FDCPA, defendant likewise violates RR FDCPA).

1    involved."  (See Def.'s Mot. to Dismiss p. 6.)[2]

2          Interpreting 15 U.S.C. § 1692e(3), the Second Circuit has held that the use of an

3    attorney's "letterhead and signature on the collection letters [is] sufficient to give the least

4    sophisticated consumer the impression that the letters [are] communications from an

5    attorney."  See Clomon v. Jackson, 988 F.2d 1314, 1320-21 (2d Cir. 1993) (holding use of

6    attorney's signature implies "attorney signing the letter formed an opinion about how to

7    manage the case of the debtor to whom the letter was sent.")  More recently, the Second

8    Circuit has held "a letter sent on law firm letterhead, standing alone, does represent a level

9    of attorney involvement to the debtor receiving the letter," in the absence of a disclaimer

10   therein that an attorney was not so involved.  See Greco v. Trauner, Cohen & Thomas,

11   L.L.P., 412 F. 3d 360, 364-65 (2d Cir. 2005).  Other circuit and district courts are in accord

12   with the Second Circuit's interpretation of § 1692e(3).  See, e.g., Avila v. Rubin, 84 F. 3d

13   222, 229 (7th Cir. 1996) (holding "attorney's signature implies the attorney has formed a

14   professional judgment about the debtor's case"); Masuda v. Richards & Co., 759 F. Supp.

15   1456, 1460-61 (C.D. Cal. 1991) (same).

16         Although WWR's letters do not explicitly state they are signed by an attorney, both

17   letters are printed on WWR's letterhead and state WWR is a law firm attempting to collect

18   on "this debt" or "this account."  (See Compl. Exs. A, C.)  Given that the letters do not state

19   that the signatories have a title other than that of an attorney and do not include a

20   statement that an attorney was not involved in the matter, it is reasonable for the recipient

21   to infer an attorney was involved, and certainly the least sophisticated debtor would infer

22   that an attorney was involved.  See Greco, 412 F.3d at 364-65.

23         Accordingly, WWR has not shown it is entitled to dismissal of Dupuy's claims to the

24   extent such claims are based on WWR's having made an implicit representation of attorney

25   involvement.

26   //

27   ─────────────────────

28        [2]In its initial disclosures, WWR concedes that the signatories, Vaccarelli and Green,
     are attorneys.  (See Def.'s Initial Disclosures, filed June 1, 2006, at 2:14-19.)

**B.  Implied Threat of Action Not Intended to be Taken**

A false or misleading representation under the FDCPA includes a "threat to take any action that cannot legally be taken or that is not intended to be taken."  See 15 U.S.C. § 1692e(5).  A violation of § 1692e(5) occurs where "(1) a debtor would reasonably believe that the notices threaten legal action; and (2) the debt collector does not intend to take legal action."  See United States v. Nat'l Fin. Servs., Inc., 98 F. 3d 131, 135 (4th Cir. 1996).

In the instant complaint, Dupuy alleges WWR used "the authority and weight of its marquee attorney letterhead" to contact "those consumers who would be intimidated by a collection letter from an attorney or believe [WWR's] implied threat that litigation was imminent."  (See Compl.  ¶ 8.)[3]  In its motion, WWR argues its letters do not include an implied threat of litigation.

In determining whether a debt collector has implicitly threatened litigation, courts focus on the specific language in the debt collector's communication to the debtor.  For example, where the least sophisticated debtor would construe language in a letter as no more than a "prudential reminder" that a debt is outstanding, the letter does not include an implied threat of litigation.  See Wade, 87 F. 3d at 1099, 1100 (holding statements "[i]f not paid today, [the debt] may stop you from obtaining credit tomorrow" and that debtor's "credit may be adversely affected" would be understood by least sophisticated debtor as prudential reminder of debt and not implicit threat of litigation); see also Abels v. JBC Legal Group, 428 F. Supp. 2d 1023, 1028-29 (N.D. Cal.) (holding statement that debtor's failure to remit payment within thirty days may subject recipient to additional "statutory penalties" would not be understood by least sophisticated debtor as threat of litigation).  By contrast, courts have held that a debt collection letter includes an implicit threat of litigation when it refers to the possibility of litigation.  See, e.g., Nat'l Fin. Servs., Inc., 98 F.3d at 134 (holding statements "I am the collection attorney"; "I have the authority to see that suit is

---

[3]Dupuy further alleges WWR did not intend to take legal action.  (See Compl. ¶ 9.) According to Dupuy, WWR "would not sue a debtor that resided in California, because [WWR] was not licensed to practice law in California" and WWR was only retained "to send collection letters."  (See id.)

1 filed against you"; and "I will be compelled to consider the use of legal remedies" would be

2 understood by least sophisticated debtor as implied threats of litigation); Russey v. Rankin,

3 911 F. Supp. 1449, 1454 (D. N.M. 1995) (holding statement defendant had "legal right to

4 file a lawsuit" would be understood by least sophisticated debtor as implicit threat of

5 litigation).

6        Here, Dupuy's complaint does not identify any language in either letter that implies a

7 threat of litigation; rather, the complaint, as noted, refers to WWR's use of its letterhead.

8 (See Compl. ¶ 8.)  The use of a law firm letterhead has been found insufficient by itself to

9 imply a threat of litigation; as stated by one district court, "the mere inference that legal

10 action could be taken because the letter is on law firm letterhead is not enough for

11 § 1692e(5) purposes."  See Veillard v. Mednick, 24 F. Supp. 2d 863, 867 (N.D. Ill. 1998);

12 see also Abels, 428 F. Supp. 2d at 1028 (same).  The Court agrees.

13        In his opposition, Dupuy asserts one of WWR's statements in the March letter,

14 specifically, "this law firm has been retained to collect the outstanding balance due and

15 owing on this account," constitutes a threat of suit.  (See Compl. Ex. A; Pl.'s Opp. at 6:11-

16 13.)  The Court disagrees.  Such language does not compare to language courts have

17 found would cause the least sophisticated debtor to believe the defendant was threatening

18 litigation.  See, e.g., Nat'l Fin. Servs., Inc., 98 F.3d at 134; Russey, 911 F. Supp. at 1454.

19        Accordingly, WWR is entitled to dismissal of Dupuy's claims to the extent such

20 claims are based on WWR's having made an implicit threat to take legal action.

21 **C.  Amount of Debt**

22        Pursuant to 15 U.S.C. § 1692g,

23        [w]ithin five days after the initial communication with a consumer in collection
         of any debt, a debt collector shall, unless the [ ] information is contained in the
24       initial communication or the consumer has paid the debt, send the consumer
         a written notice containing . . . the amount of the debt.
25
   See 15 U.S.C. § 1692g(a)(1).
26
27        Dupuy alleges WWR's April letter fails to set forth the amount of the debt, in violation

   of 15 U.S.C. § 1692g(a)(1).  (See Compl. ¶¶ 14, 20.)  In its motion, WWR argues that "[t]he
28

language in both letters is accurate and would not confuse a 'least sophisticated consumer' as to the amount specifically owed."  (See Def.'s Mot. to Dismiss at 8:11-12.)

Section 1692g(a)(1) requires debt collectors "to state the total amount due – interest and other charges as well as principal – on the date the dunning letter was sent."  See Miller v. McCalla, 214 F. 3d 872, 875 (7th Cir. 2000).  Additionally, a debt collection letter "must state [the amount of the debt] clearly enough that the recipient is likely to understand it."  See Chuway v. Nat'l Action Fin. Servs., Inc., 362 F.3d 944, 948 (7th Cir. 2004).  Statements required by § 1692g(a) "must not be overshadowed or contradicted by other messages."  See Nat'l Fin. Servs., Inc., 98 F. 3d at 139.

WWR's March letter states, above the salutation, "Balance Due as of March 9, 2005: $7353.31," and, in the first paragraph, "As of the date of this letter you owe the amount listed above."  (See Compl. Ex. A.)  The April letter states, above the salutation, "Balance Due: $7353.31" and, in the first paragraph, "The balance listed above may change daily if interest is accruing."  (See Compl. Ex. C.)  Dupuy asserts the April letter violates § 1692g(a)(1) because it refers to the possibility of interest accruing without stating whether interest is in fact accruing, and, if interest is accruing, the amount of interest due on the date the April letter was sent.

In its "initial communication," see 15 U.S.C. § 1691g(a), specifically, the March letter, WWR does state the balance due as of the date of that letter.  (See Compl. Ex. A.) Additionally, the balance due as set forth in the April letter, specifically, $7353.31, is the identical amount identified in the March letter, thus arguably suggesting that no interest had accrued.  As noted, however, the April letter states, in effect, that interest may be accruing. Such language, from the perspective of the least sophisticated debtor, could well "overshadow" and/or "contradict" the statements made in the March letter as to the amount ultimately due.  See Nat'l Fin. Servs., 98 F.3d at 139.  Further, if in fact interest was accruing, the April letter did not disclose the amount of any interest owed as of the date the

//

//

7

1  letter was sent.[4]

2      Accordingly, WWR has not shown it is entitled to dismissal of Dupuy's claims to the

3  extent such claims are based on the manner in which WWR disclosed the amount of debt

4  in the April letter.

5  **D.  False and Misleading Settlement Offer**

6      Under the FDCPA, a "false or misleading" representation includes "[t]he use of any

7  false representation or deceptive means to collect or attempt to collect any debt or to obtain

8  information concerning a consumer."  <u>See</u> 15 U.S.C. § 1692e(10).  More generally,  the

9  FDCPA provides: "A debt collector may not use unfair or unconscionable means to collect

10  or attempt to collect any debt."  <u>See</u> 15 U.S.C. § 1692f.

11      The April letter states, "Please be advised that our client has authorized us to accept

12  50% of the total balance due as settlement of this claim.  This authorization is good for

13  fifteen (15) days from the date of this letter."  (<u>See</u> Compl. Ex. C).  Dupuy alleges this

14  language constitutes a "false limited time settlement offer," (<u>see</u> <u>id</u>. ¶ 21), because

15  Sherman, WWR's client, "would have accepted 50% of the amount claimed or less at any

16  time," (<u>see</u> <u>id</u>. ¶ 15).  WWR argues the April letter "merely sets forth the terms of the

17  settlement offer" and does not state such offer is "a one time or final offer."  (<u>See</u> Def's Mot.

18  to Dismiss at 12:15-16.)  In his opposition, Dupuy offers no response to WWR's argument,

19  other than to note he has alleged a claim that the settlement offer in the April letter is

20  "false."  (<u>See</u> Pl.'s Opp. at 4:1-2.)

21      Where a debt collection letter contains an offer to settle by a specified date and

22

---

23      [4]As explained in <u>Miller</u>, "where the amount varies from day to day" a defendant can
24  satisfy § 1692g(a)(1) by using "safe harbor" language similar to the following: "As of the
   date of this letter, you owe $ [the exact amount due].  Because of interest, late charges,
25  and other charges that may vary from day to day, the amount due on the day you pay may
   be greater.  Hence, if you pay the amount shown above, an adjustment may be necessary
26  after we receive your check, in which event we will inform you before depositing the check
   for collection.  For further information, write the undersigned or call 1-800-[phone number]."
27  <u>See</u> <u>Miller</u>, 214 F. 2d at 876.  Although WWR argues, in summary fashion, that its letters
   contain language sufficient to fall within the "safe harbor" language approved in <u>Miller</u>,
28  neither letter sent to Dupuy contains language even remotely similar to the above-quoted
   notice.

1   makes it appear therein that such offer is a "one-time, take-it-or-leave-it offer," when in fact

2   the debt holder is prepared to make other offers after the expiration date, the letter contains

3   a false statement within the meaning of the FDCPA.  See Goswami v. American Collection

4   Enterprise, Inc., 377 F. 3d 488, 495-96 (5th Cir. 2004) (holding statement "only during the

5   next thirty days, will our client agree to settle" to be false and misleading where client would

6   have settled after specified 30-day period).  By contrast, where a settlement offer of stated

7   limited duration is unaccompanied by any language implying that the offer is a one-time

8   offer, the offer is not false within the meaning of the FDCPA.  See, e.g., Gully v. Van Ru

9   Credit Corp., 381 F. Supp. 2d 766, 768-72 (N.D. Ill. 2005) (finding no violation where letter

10  stated, "[w]e are authorized to settle your account with the above client which, as of the

11  date of this letter, is $796.87 for the sum of $318.75, provided this sum is received by

12  [defendant] by November 11, 2003" and "[t]he offer automatically will be revoked if your

13  payment is not received by November 11, 2003"); Hernandez v. AFNI, Inc., 428 F. Supp.

14  2d 776, 777, 783 (N.D. Ill. 2006) (finding no violation where letter stated defendant would

15  "close the account upon receipt of $78.25" and that "[t]his offer is only valid if funds are

16  received or secured no later than 11/14/04").

17          Here, the settlement offer falls well within the second category.  As the court

18  observed in Hernandez, there is a distinction between "a collector's letter making a one-

19  time offer, as in Goswami, and a letter stating that the current offer is subject to expiration

20  without indicating anything about the possibility of future offers."  See id. at 781 (emphasis

21  added).  To hold otherwise would effectively preclude settlements of claims against

22  unrepresented debtors, as the debt collector would be given a Hobson's choice of either

23  (1) making an offer that is open-ended in duration, a commercially impractical position, or

24  (2) including an expiration date but expressly announcing to the debtor that once such date

25  has passed, a better offer will be forthcoming.

26          Accordingly, WWR is entitled to dismissal of Dupuy's claims to the extent such

27  claims are based on WWR's having falsely represented the nature of the terms of the

28  settlement offer in the April letter.

9

1

**CONCLUSION**

2   For the reasons stated above, WWR's motion to dismiss is hereby GRANTED in part

3   and DENIED in part, as follows:

4   1.  To the extent Dupuy's claims are based on the allegation that the collection

5   letters contain implied threats to take legal action not intended to be taken and that the

6   settlement offer in the April letter is false and misleading, the motion is GRANTED and

7   such claims are hereby DISMISSED.

8   2.  In all other respects, the motion is DENIED.

9   3.  A case management conference is hereby SCHEDULED for September 1, 2006,

10  at 10:30 a.m., Courtroom 7.  A joint case management statement shall be filed no later than

11  August 25, 2006.

12  **IT IS SO ORDERED.**

13

14  Dated: August 7, 2006

15

_____
MAXINE M. CHESNEY
United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

10